# Landis *et al. versus* Scott.

An executor who, without authority, assumes the charge of the testator's real estate, is liable to account to the devisees as a trustee or agent; and, as such, it is his duty to keep a regular account with his principals or *cestuis que trust*.

If he neglect to keep such account, he assumes the burden of proving that he did not in fact, and could not, collect all the rents and profits of the premises.

He is *primâ facie* accountable for all the rents, and can only be discharged by proof that he did not collect them, and could not have done so by the faithful exercise of due diligence, within the limits of the powers which he possessed.

On an appeal, the facts will be taken to be as found by an auditor or master, unless in cases of manifest error, or plain mistake.

An agent or trustee who takes possession of, and himself occupies, a part of the real estate of his principals or *cestuis que trust*, is chargeable with the highest rent that could have been obtained for it.

If an agent or trustee, in consequence of the pendency of legal proceedings between his principals or *cestuis que trust*, is prevented from paying over the moneys in his hands, it is his duty to invest the fund, and, in default, he is chargeable with interest.

He is not to be allowed commissions on surcharges in his accounts. Commissions are given in compensation for trouble and risk; they are not earned as to the rents of property of which he was himself the tenant; and are not to be allowed upon rents for which he has denied his accountability.

APPEAL IN EQUITY from the Common Pleas of *Philadelphia.*
This was a bill in equity by John Landis and others, devisees

[Landis *et al. v.* Scott.]

of Jacob Haars, against Freeman Scott and Michael Kalbach, for an account.

The bill set forth that Jacob Haars died seised of a large amount of real estate in the city and county of Philadelphia, which by his will, dated the 26th January 1845, he devised to the complainants and others, in the proportions therein mentioned.

That from the time of the death of the testator, until the sale of the property under proceedings in partition, the defendant Scott collected the rents, issues, and profits thereof, to a very large amount. That during part of the time he acted without authority; but afterwards obtained powers of attorney from certain of the parties, which were afterwards revoked with notice to him.

That Scott was a brickmaker, and for a long time after the death of the testator, occupied for the purposes of his business, and made bricks upon and from the soil of a portion of the premises; but by what right the complainants were ignorant.

That they had frequently applied to him for an account of the rents, issues, and profits of the premises; and had demanded that he should pay over to them the amounts or proportions of the same, to which they were respectively entitled; but that he had neglected and refused so to do. They therefore prayed for an account, and that the alleged powers of attorney might be decreed to be delivered up and cancelled.

The answer admitted the execution of the will; that the testator died seised of the real estate therein mentioned; and that the interests of the complainants to the rents thereof were correctly stated, according to the will and codicil, or as agreed upon by the parties, and decided by the Orphans' Court after long controversies.

It then set forth, that it was the intention of the testator, when he made his will, that defendant should have power to sell his real estate, and divide the proceeds, and take charge and care of it, and collect the rents until it was sold; and that the testator died under the full impression that he had given defendant that power as his executor. That most of the devisees resided out of the state, and those residing here neglecting it, and defendant having been on terms of intimate friendship with the testator for nearly twenty-eight years, did, at his death, take charge of his real estate, and managed it as well as he could, according to what he believed to be his duty, and what he knew to be the intentions of the testator; that the property was in a very bad condition, wanting much repairing, some of it hardly tenantable; that he had the property put in reasonable repair for renting and selling, and kept it so till sold; that without such repairs the property would not have been productive, and would have sold for very poor prices; that by his exertions, the property brought about $20,000 more than it otherwise would. That he collected all the rent he could, but could

not collect all; and for much of what he did collect, he was obliged to give refunding receipts, indemnifying the tenants against other parties, and pledging his responsibility, and receiving the rent on those conditions, to prevent its being lost; that if he had not collected what he did collect, by pledging his own responsibility to refund, a large portion of the rents would have been lost.

That defendant, with the tacit consent of some of the parties, and for the benefit of the whole, did occupy and make brick from a part of one lot, for which he charged himself a reasonable rent; that he had no lease from Jacob Haars, or any other person.

A supplemental answer was afterwards filed, stating in detail the rent of each property, the date and amount of each sum, when and as received, for the rent of the different properties; and the different items of expenditures for taxes, repairs, &c.

That a majority of the devisees resided in Ohio, one in Indiana, one in Illinois, who went to California; many of them were minors, and without guardians for two, three, four, and five years.

That nearly one-fifth of the whole estate was attached by a creditor from Ohio, for a large amount; which attachment defendant was instructed to resist, as unjust, and originating in fraud; and that he did so at much trouble, expense, and loss of time.

That there were disputes and controversies among the devisees themselves as to their respective rights, and as to the construction of the will, which caused great delay, uncertainty, and embarrassment, and were only finally settled by agreements and compromises among the parties.

That these controversies and disputes among the parties caused great delay, uncertainty, and embarrassment, and in the meantime it was the interest of all concerned, that somebody should collect the rents, if possible, and take care of the property. No one did it, or attempted to do it; and defendant did the best he could, under the circumstances, and saved the devisees thousands of dollars, which otherwise would have been lost.

The court below made a decree in favour of the complainants, and referred it to masters to state an account against the defendant. The masters, in their final report, greatly surcharged the defendant, charging him with rents which he alleged were never actually received, with interest on the balance in his hands, with an occupation rent of the brick yard in his own possession; and refused to allow him commissions on such surcharges. The particulars are sufficiently stated in the opinion of the court. The court below made a final decree, in accordance with the masters' report; and from this decree the defendant Scott appealed.

*S. H. Perkins*, for the appellant.

[Landis *et al. v.* Scott.]

*E. S. Miller*, for the appellees.

The opinion of the court was delivered by

STRONG, J.—Scott, the appellant, was the executor of the will of Jacob Haars, deceased. The will devised the decedent's real estate to the appellees and others, but gave to the executor no authority to interfere with it, or to collect its rents, issues, and profits. Most of the devisees resided at a distance, and many of them in other states. Immediately after the death of the decedent, and without any authority, the appellant assumed the charge of the property, collected the rents, made repairs and new leases, and used a portion for his own purposes. He afterwards obtained powers of attorney from some of the devisees, which were prepared by himself, or under his direction. These powers authorized him to take care of and collect the rents of the real estate, and to repay himself all moneys he might advance on account of the principals, and also all costs, expenses, and commissions, at six per cent., and proper charges for his time, care, trouble, and responsibilities. These powers were also declared to be irrevocable. Mr. Scott continued to act as trustee or agent for the property during about six years, and until it was sold under proceedings in partition. This bill was then filed to compel an account, and the questions raised by the appeal relate exclusively to the extent to which the appellant is chargeable as trustee or agent of the devisees. His liability to account is not controverted.

It is a material fact, to be noticed at the outset of this case, that the appellant kept no regular account of his transactions, nor forwarded any to the principals or *cestuis que trust*. According to his own statement, he never had anything more than a mere memorandum book, which he carried in his coat pocket, to make an entry of the rents when he collected them, and even that he had lost. The duty of a trustee, or of an agent in charge of property, to keep regular and correct accounts, is imperative. If he does not, every presumption of fact is against him. He cannot impose upon his principal, or *cestui que trust*, the obligation to prove that he has actually received what he might have received, and what it was his duty to endeavour to obtain. By failing to keep and submit accounts, he assumes the burden of repelling the presumption and disproving negligence and faithlessness.

There were eighteen properties of the decedent, Jacob Haars, the charge of which was taken by the appellant—some of them ground-rents, and others corporeal tenements, much out of repair. The greater number of the latter were under leases made by the testator, at stipulated rents, and some were subsequently rented by the appellant. He is *primâ facie* accountable for all the rents of all the properties, during the whole period of his agency, and he cannot be discharged from such accountability, except by

[Landis *et al. v.* Scott.]

proof that he did not collect them, and could not collect them by the faithful exercise of due diligence. It is true, that he had not the ample power of an owner to enforce payment by distress, and he is not responsible for not exerting power which he did not possess; but he is responsible for the exercise of due diligence within the limits of the powers which he had. And inasmuch as he failed to keep regular accounts, it is incumbent upon him to show affirmatively that such diligence was exercised, in order to discharge himself. That this is the rule by which the account should be stated, is not controverted,—and this rule was laid down by the Court of Common Pleas for the guidance of the masters.

In accordance with this instruction, they have stated an account which the court below has confirmed, and entered a final decree thereon. Most of the errors assigned relate to those portions of the rents which were surcharged against the accountant, in consequence of his failure to show that he had not received them, or that he had vainly used due diligence and made reasonable efforts to collect them. Whether he had, or had not, was a question of fact; and it having been found adversely to the appellant, he has to encounter in this court, not only the presumption which arises from his neglect to keep regular accounts, but the additional presumption of an adjudication against him. It is not meant that he is concluded absolutely, but it has repeatedly been held, that on an appeal, the facts will be taken as found by an auditor or a master, unless in cases of manifest error or plain mistake: Mengas' Appeal, 7 *Harris* 222; Miller's Appeal, 6 *Casey* 478; Burroughs's Appeal, 2 *Casey* 264.

We are brought, therefore, to the examination of all the errors assigned, (except the 2d, 18th, 19th, 20th, and 22d,) at liberty only to inquire whether the report of the masters was flagrantly or palpably erroneous. In surcharging as they have done, they have found either that the accountant actually received the sums with which he is surcharged, or if he has not, that he has not shown that he unsuccessfully used due and reasonable diligence to collect them. Of course, what diligence was due and reasonable, depended in some measure upon the extent of his powers.

The masters surcharged the appellant with $803.75, rents of property No. 1, the house in Sassafras street. At the death of Mr. Haars, this house would seem to have been rented to Mrs. Latimer at $400 per annum. She continued the tenant about three years, until 1848, when either Jane Gray or Martha Gray became the tenant. The former testifies that she rented from Mr. Scott. The latter testifies that she rented from Mrs. Latimer. Both agree, however, in asserting, that after a short time the rent was paid to Mr. Scott, and he receipted for it as early as July 20th 1848. It may be, that their original lease was from Mrs. Latimer, but it is in evidence that shortly afterwards they held under Mr.

[Landis *et al. v.* Scott.]

Scott. It was not proved, that all the rent due from Mrs. Latimer was not obtained. A distress was levied for a part of it about the time when Mrs. Gray became the tenant, but whether the whole, or what part of it, was realized from the distress, does not appear in evidence. Surely this was not enough to discharge an agent, who could only be relieved by showing affirmatively that he did not receive the rent, or that he made every reasonable effort to obtain it in vain. It is proved, that all was not collected from Mrs. Gray, and she testifies that he got all the rent he could. But he suffered her to remain the tenant until the house was sold in 1851, without even asking her to leave. He made no distress, although in this case he had power to distrain; for the tenant held directly from him, and he had distrained upon her predecessor. This certainly was not due diligence, and, so far as relates to this property, the masters, instead of having made a mistake, were clearly warranted in finding the facts as they did.

The error assigned respecting the rents of property No. 2, is not founded in fact. The accountant is charged with no more than he admits having received.

The masters have next surcharged the appellant with $405, rents of property No. 3 (the old sugar-house). At the death of Mr. Haars, it was under lease to Mr. Lang at $300 per annum. There is some evidence that Lang failed. He moved away about one year after the death of Mr. Haars, but it is not proved that he did not pay the rent. Nor is there any testimony that the appellant made the slightest effort to obtain it. He was, therefore, properly charged with the rent of that year. The building was greatly out of repair, and on that account, probably, was untenanted for some time. Why it was not put in tenantable order, when the agent had funds in his hands to enable him to repair it, it is not necessary to inquire. He has only been charged with the rents during the time it was tenanted; and, with the exception of the year during which it was occupied by Lang, the tenants were his, and appear to have paid their rent.

The next surcharge is of $440, the proceeds of a distress upon the goods of Basketter & Marsh, tenants of "the Irish Tract Lane" property. The distress is shown to have embraced a large amount of personalty, and though it is not in evidence that the above sum was the precise amount realized, yet that being the aggregate of the sales, it is to be presumed Mr. Scott received it, in the absence of any evidence to the contrary. For a part of it, indeed, he may have been primarily accountable as executor; but it is not pretended that he has accounted for it, and the appellees are equally entitled to it all, in whatever character he may account. Under these circumstances, we do not feel warranted in disturbing the decree of the Court of Common Pleas in regard to it.

Of the surcharge of $120, for the ground-rent of property No.

[Landis *et al. v.* Scott.]

17, payable July 1st 1850, and January 1st 1851, it need only be said, that it belonged to the devisees under the will, and not to the purchasers, for the title of the latter had not then vested. No evidence was produced, nothing, other than the accountant's own declaration, to show that he had not received it, or even that he had made a *bonâ fide* effort to obtain it. There was, therefore, nothing to discharge him from his presumed liability.

Another surcharge is of the ground-rent issuing out of lot No. 18, payable by William Morton. The appellant, in response to an interrogatory in the bill filed against him, requiring him to state what sums or amounts he had received as or being the rents, issues, and profits of real estate of Jacob Haars, deceased, returned this rent with which the masters charged him. He added to his answer this note: " These rents have not been collected, and could not have been without a doubtful and uncertain lawsuit, which I did not feel authorized to commence. I may be chargeable with them." There is evidence that Morton the covenantor had failed, and probably from him the rent could not have been obtained. But the lot was a valuable one, and the ground-rent brought at the sale nearly its par value. There were several houses built upon it which were tenanted. It is not to be presumed, that a ground-rent of $105 could not have been collected from the tenants of all these houses. At all events, it was the duty of the agent to make an effort to obtain it. But it does not appear, that he ever asked for the rent, or exercised any diligence in regard to it. He gave no notice to the appellees that the rent could not be collected, but left them to presume that their rights were being secured. It is no wonder, therefore, that he himself should express the opinion that he might be chargeable.

We have had more difficulty with the surcharge of rents of property No. 13, the ground-rent of John Marks. The evidence established, that the covenantor was utterly irresponsible, during the whole time in which the property was in charge of the appellant. The rent was a large one, $600 per annum. There were six inferior houses erected on the lot out of which the ground-rent issued; but they were badly built, and could not be rented for enough to pay the ground-rent. Only two or three of them were tenanted during four years, and the proof is, that the rent could not have been made out of the tenants' goods. Mr. Scott, however, collected $2501, and charged himself with it. Considering the limited extent of his powers, the fact that he could not distrain, and the attested fact that even distress would have been fruitless, we think the masters were mistaken in charging him with $1099 more;—mistaken in holding him responsible for the entire ground-rent during the six years, when he had charge of the property. It is quite certain, that he did not receive it, and he could not be required to do more than it is proved he did. If all the

[Landis *et al. v.* Scott.]

houses had been rented during the entire six years, the aggregate rents would not have been equal to the ground-rent. Indeed, the appellant seems to have charged himself with a sum fully as large as all the rents which the ground-rent tenant reserved to himself. In regard to this rent, enough was shown to warrant a finding of due and reasonable diligence. In this particular, the decree of the court below must be corrected. This surcharge and the interest upon it must be stricken from the account.

In opposition to the surcharge of rents of the other properties already noticed, it has been urged, that the appellees gave no authority to collect rents for two years after the death of Jacob Haars, and that some of them revoked the power given in less than two years thereafter. It is contended, that it is unjust, on this account, that the appellant should be charged with the nominal rental instead of what he actually received and was able to collect. This is the substance of the fifth and sixth errors assigned. To this it may be answered that, without waiting for authority, the appellant took charge of the real estate, himself prepared the powers of attorney that were given, and persisted in retaining charge of the real estate, notwithstanding the revocation. He had all the powers which he desired, and he never complained that they were inadequate. Notwithstanding this, however, he has not been charged with what he was unable to collect. He has been held responsible only for due diligence, and has been allowed to discharge himself by showing that he did exercise such diligence according to the power which he had. Of this rule he cannot justly complain. He is in no case held responsible for not distraining upon tenants not his own, or for not bringing suit, or for not entering upon defaulting ground-rent tenants. Not having used the powers which he had, it cannot avail him now to say that they were not plenary. They were all that he asked for, and never until called upon to account, did he aver to the appellees that he could not collect rents because they were too limited.

We pass now to the twelfth assignment of error, which relates to the charge against the appellant for the use of " the Irish Tract Lane" brickyard. When he assumed his agency, the property was under lease to Basketter & Marsh, at fifty cents a thousand for all the brick manufactured. The interest of the tenants was soon afterwards sold at sheriff's sale, and bought by him. He had a right to buy it, and in so doing, he became the tenant of the devisees of the land, and held under them. True, he destroyed the written lease, which as executor he had no right to do. He could not thus sever the privity between himself and the devisees of the tract, without their consent. Now, if he took possession of the lot under the lease, and manufactured brick, it cannot be doubted that he is accountable according to the stipulations of the lease. This we do not understand to be denied. But it is insisted, that his

[Landis *et al. v.* Scott.]

cancellation of the lease was intended for the benefit of the appellees, and that, consequently, he should not be treated as holding under it. Suppose this be admitted, we do not perceive that it betters his condition. He is even then chargeable with rent, or profits. What rent? Inasmuch as he made no effort to obtain another tenant, but took possession himself, he must of course respond in the highest rent which could have been obtained. What that rent was the masters have reported; and their finding fixes it no higher than the lot had previously been rented for. We cannot say that this was a plain mistake. We do not assert that he was liable for profits, though a trustee may be so. The masters have not undertaken to charge profits, but rent; and they have referred to profits only to show that the rent charged was not unreasonable. It does not touch this question, to argue that, even though attorney in fact and trustee of the appellees, he had a right to buy the term of Basketter & Marsh at the sheriff's sale, and that his having done so imposed upon him no accountability beyond his bid. All that is true, but it is the use and occupation of the land for which he has been held to account.

We think also that the exception to the charge of interest cannot be sustained. The trust was one which, in the first instance, the appellant assumed unasked. Though there was doubt as to the rightful owners of a part of the rents, and though, in consequence, delay of payment of that part was necessary, yet that constitutes no justification for retaining the whole fund for a period of years, without investment and entirely unproductive. True, he could not invest except at his own risk, but he held at his own risk, and, having been a volunteer, he cannot be permitted to put the appellees in a worse condition than they would have been in, if he had left the rents in the hands of the tenants. Had he done that, they would have been entitled to interest. Still more, there is every reason to believe that he used the money. Not having deposited it to his credit as agent, it was incumbent upon him to prove clearly that it was kept unemployed by himself. In regard to much the greater part of it, he made no attempt to prove that he had not used it, and the evidence that any of it was idle is most unsatisfactory. His delay in accounting, as well as in responding to the bill, affords ground for a legitimate inference that the money was not on hand. And if used by him, the pendency of exceptions by the appellees to the master's report does not absolve him from paying interest; for, if it did, he would be allowed to make profit out of the trust funds. All profits inure for the benefit of the *cestui que trust.* That interest should be decreed against the appellant on the sums surcharged equally with the sums admitted, is too clear for argument. The surcharging rests upon the principle, that the sums added were either received or should have been. Interest upon them is, therefore,

necessary in order to give to the *cestuis que trust* the benefit which they would have enjoyed had the trustee been faithful.

Nor do we discover any error in the refusal to credit the appellant with commissions upon the surcharge of rent for the brick yard, or other rents. Commissions are given as compensation for trouble and risk, and they are forfeited whenever there is a want of fidelity on the part of the trustee. They are not earned, and are not to be allowed upon rents of property of which he is himself the tenant, for they have cost neither trouble nor risk; and they are equally inadmissible upon rents for which the trustee has denied that he was accountable.

It is hardly necessary to add, that the costs were properly imposed upon the appellant. The great discrepancy between the account as rendered by him, and the account as stated by the masters, fully justifies such an imposition. The conduct of the appellant rendered the creation of the costs necessary.

We have thus disposed of all the assignments of error, except that which relates to the distribution of the fund decreed to be in the appellant's hands. The court has decreed to the administrator or heirs of Michael Kalbach, deceased, or John H. Campbell, Esq., his or their attorney, $1087.31 of the balance in the appellant's hands. This part of the decree, it is contended, is erroneous. When the answer to the bill was filed, it was referred to a master to state an account. He reported an account and distribution, and by that, the sum awarded to Michael Kalbach's administrator or heirs was $401.11. This report was not confirmed. Exceptions to it were filed by some of the appellees, though no exceptions were filed by Michael Kalbach's representatives. These exceptions were not to the distribution, but they were radical to the account. Partially, they prevailed in the court below, and the account was sent back, for restatement, to the same and an additional master. The first report was not approved, and there never was, therefore, an adjudication as between Mr. Scott and Kalbach's representatives. The matter was as open when it was referred to the two masters, as if the first report had never been made. In truth, there never was any report prior to that of the two masters, for that which was intended as such was not accepted. Had the report of the first master been accepted and confirmed, as to Michael Kalbach's representatives, or had the exceptions filed been aimed at the distribution, the case would wear a different aspect. But as it is, none of the distributees were concluded, and there was no adjudication until the final decree. This assignment of error cannot therefore be sustained.

This disposes of all the objections made to the decree. We feel constrained to overrule them all, except the fifteenth. The court erred in surcharging the appellant with $1099.90, and interest upon it, avails of the ground-rent payable by John Marks.

[Landis *et al. v.* Scott.]

Thus far the decree must be corrected. The surcharge of rents and interest is $1726.86, which is to be deducted from the whole sum with which the appellant is charged.

And now, to wit, March 21, A. D. 1859, this cause came on to be heard at this term, and was argued by counsel, and thereupon, upon consideration thereof, it is ordered, adjudged, and decreed, that the decree of the Court of Common Pleas be reversed, and that the report of the masters stating the account of Freeman Scott be corrected, by deducting from the balance found due the devisees, the sum of $1726.86, leaving the balance $24,368.64. And it is further ordered, adjudged, and decreed, that the said Freeman Scott do pay to the administrator or heirs of Michael Kalbach, deceased, the sum of $1015.36, it being the one twenty-fourth part of said balance; together with interest on said sum from May 1st 1858. And that he do pay to John Landis or E. Spencer Miller, Esq., his attorney, the sum of $4670.65, it being one-fifth of the remainder of said balance; together with interest thereon from May 1st 1858. And that he do pay to Daniel Landis, son of Henry Landis, $311.37 (it being two-thirds of one-tenth of one-fifth of the said remainder), with interest thereon from May 1st 1858. And that he do pay six-sevenths of one-fifth of the said remainder to the following named persons, or to E. Spencer Miller, Esq., their attorney, namely, to Michael Light one-seventh part, $667.23; to David Light, first, $667.23; to Mary Light, wife of David Light, second, $667.23; to Nancy Light $667.23; to Sally Stover, late Light, wife of John Stover, $667.23; and to Susanna Bushey, late Light, wife of D. Bushey, $667.23; together with interest upon each of said sums from May 1st 1858; and that he pay the costs of the appeal.