In Re: Estate of Ephraim J. Custer, Deceased.

Argued April 17, 1928.

Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.

*Philip N. Shettig,* and with him *Owen T. Sharkey,* for appellant.

No appearance and no printed brief for appellee.

Opinion by Gawthrop, J., July 12, 1928:

Prior to the filing of their account, the administrators of the estate of Ephraim J. Custer filed a petition in the court below setting forth that the decedent died possessed of twenty-three hundred and eighty-two shares of the common capital stock of Windber Telephone Company, having a par value of $10 per share; that the inventory of the personal property filed showed that this stock was appraised at $25 per share, or a total of $59,550; that the petitioners believed that the appraised value thereof was excessive; that the book value of the stock was about $12 per share, or $28,584; that the administrators had faithfully and diligently attempted to find purchasers for the stock without avail; that one of them, Henry K. Sarver, was willing to purchase the same for the sum of $43,000, or a little more than $18 per share, which the petitioners believed to be a higher and better price than could be obtained for the stock at public sale; that all of said stock was held by various banks and individuals as collateral security for notes of the decedent; and that it was imperative that the stock be sold without further delay. The widow and the adult heirs of the decedent signified their consent to the sale by a writing attached to the petition and the guardian of the two minor heirs was served with notice of the presentation of the petition. The prayer of the peti-

tion was granted and the sale was made. The widow filed exceptions to the account of the administrators, contending, inter alia, (1) that the accountants should be sur-charged with the difference between the appraised value of the Windber Telephone Company stock and the price at which it was sold; and (2) that the compensation charged by the accountants was excessive. The court found as a fact, upon abundant evidence, that the sale of the telephone stock to Sarver "was a fair and conscionable transaction whereby the estate secured the benefit of the fair market value of the stock." All of the evidence was to that effect, the exceptant producing no proof to the contrary. "It not infrequently happens that a more advantageous sale may be had if the trustee is permitted to bid, if the sale is to be public, or to buy if it is to be private; and the court, if satisfied that such will be the result, may, upon notice to all parties in interest, if application is made in advance, grant leave so to bid or purchase (Dundas's Appeal, 64 Pa. 325):" Penrose, J., in Price's Estate, 13 D. R. 50. An analysis of the account of the administrators shows that the assets of the estate liquidated by them were about $80,000. Their claim for compensation for which they took credit in their account was $6,000. The court held that "a commission of five per cent. ...... is sufficient, and five per cent. of that amount ($80,000) would be $4,000, or $2,000 apiece." It fixed the compensation of Custer at $2,000 and sur-charged him with the sum of $1,000. But it found that Sarver was not entitled to receive any compensation based upon the proceeds of the Windber Telephone Company stock, for the reason that he was the purchaser thereof.

The single question presented for our consideration on this appeal is whether this was a valid reason for so holding, all other questions raised by the assignments of error having been withdrawn at the time of the oral argument. In reaching its conclusion on this

point, the court relied upon Landis v. Scott, 32 Pa. 504; Bedell's Appeal, 85 Pa. 398; Hoffer's Estate, 156 Pa. 473, and certain decisions by our courts of first instance, to the effect that an executor or administrator is not entitled to receive any compensation based upon commissions on debts he owes and pays to the estate. It reasoned that it makes no difference whether the debt to the estate was contracted before or after the death of the decedent and that in neither case can the accountant claim that he had any trouble in collecting the money from himself and paying it over to the estate. Upon full consideration we are unable to follow this reasoning or adopt the conclusion. We regard the rights of a trustee who, with the sanction of the court, buys property belonging to the estate in his charge as different from the rights of one who merely owes a debt to the estate. Our attention has been brought to no case in this state, and we have discovered none, holding that a trustee who buys at his own sale under the authority of the court is not entitled to any compensation on account of the property which he buys. In Catanach's Estate, 273 Pa. 368, one of the contentions of the appellant was that two of the executors were not entitled to any commission because of the purchases made by them and for their account at the public sale without having been authorized by the court to bid at the sale. The Supreme Court decided that the findings of the auditor, that the purchases made by the two accountants were not to the disadvantage of the estate, were correct and that there was no reason for denying to them any part of the commissions charged. As stated by STRONG, J., in Landis v. Scott, supra, ''commissions are given as compensation for trouble and risk, and they are forfeited whenever there is a want of fidelity on the part of the trustee. They are not earned, and are not to be allowed upon rents of property of which he is himself the tenant, for they have cost neither trou-

ble nor risk.'' Chief Justice Tilghman said in Walker's Estate, 9 S. & R. 223, the question is: ''What is an adequate allowance for the trouble of doing the whole business? If the trouble of the executors has been unequal, as is generally the case, they should do justice among themselves, by assigning to each, a share of the whole allowance, proportionate to his trouble; or, if they choose to divide it equally, it is their own concern, and they may settle it as they please.'' This practice has continued to be recognized both by court and bar. The remedy by an executor against his co-executor for his share of compensation is in a common law court: Wickersham's App., 64 Pa. 67. Sarver as well as his co-administrator had not only the responsibility and risk of safely keeping the telephone stock as part of the assets of the estate, but it was his duty to endeavor to convert it into cash to the best possible advantage of the estate. All of the evidence is to the effect, and the court below found, that he faithfully performed this duty and only became the purchaser of the stock after the efforts of himself and his co-administrator to sell it to someone else. had failed. After examining the whole record and in view of the conclusion of the court below that the usual commission of five per cent. was sufficient compensation for the accountants, we are constrained to hold that the mere fact that Sarver bought the telephone stock was no valid reason for depriving him of that part of the compensation which was calculated upon the proceeds thereof.

The assignment of error complaining of the reducing of the compensation of one of the accountants on that account is sustained and the record remitted with direction to enter an order not inconsistent with this opinion, the cost of this appeal to be paid by the estate.

Trexler and Keller, JJ., dissent.