## May Estate

*Reiley & Reiley*, for accountant.

*Paul A. Koontz*, for exceptant.

WRIGHT, P. J., July 23, 1948.—We are here passing upon exceptions to the report of the auditor in the above estate. Decedent and his wife lived together in a dwelling owned by decedent individually. A controversy has arisen between the widow and the executor, a son by a prior marriage, over certain items of personal property in the dwelling. We shall consider the exceptions separately and in chronological order.

1. Decedent owned a New Perfection oil stove which was appraised at $150. Along with other personal property of decedent, this stove was put up at public sale. It was purchased by the executor for the sum of $65. The auditor surcharged the executor with the difference between the purchase price and the appraise-

ment price, stating that "An executor cannot use his power as executor for his private benefit".

We are in entire agreement with the auditor's legal position. The question is whether it applies to the facts under consideration. As a general proposition, a fiduciary should not purchase assets of the estate under his control. The orphans' court may of course authorize a fiduciary to bid at his own sale of real estate, and apparently also of personal property: Custer's Estate, 94 Pa. Superior Ct. 70. The power is a delicate one, however, and should always be cautiously exercised, and the sale itself carefully scrutinized: Remick's Orphans' Court Practice, sec. 98. What is the actual result when a fiduciary does make an unauthorized purchase? We do not find that the transaction is automatically set aside. The procedure is to surcharge the fiduciary with the amount of any loss which the estate has suffered thereby. In Pomeroy et al. v. Bushong, 317 Pa. 459, the court said that "The purchase by an executor at his own sale of shares of stock belonging to his decedent's estate is voidable . . . upon the ground of public policy". In that case the executor was surcharged with the difference between the price paid and the price later realized. In Istocin's Estate, 126 Pa. Superior Ct. 158, principally relied on by counsel for the widow, the purchases in question were not set aside. In one instance, the executor was surcharged with the profit made when his agent resold at a higher figure. In the other instance, the executor was surcharged with the difference between the sale price and the appraised price because of his "gross negligence", inter alia, in delaying the sale.

If a fiduciary sells at public sale, the burden is upon one who seeks to surcharge him to show a loss to the estate: Tyson's Estate, 80 Pa. Superior Ct. 29. No evidence was offered in our case that the sale was delayed or conducted improperly, or that it was not a conscionable transaction whereby the estate secured

the benefit of the full market value. The inventory and appraisement is not conclusive, but only prima facie evidence. It can be questioned by any party in interest as being either too low or too high: Semple's Estate, 189 Pa. 385. We are of the opinion that the presumption arising from the inventory cannot stand in the face of proof of actual value as established by a public sale, the fairness of which is not challenged. Since it has not been shown that the estate suffered any loss because of the executor's purchase, the exception must be sustained.

2. Exception is taken to the failure of the auditor to charge the widow with the sum of $30, representing the price of a table which she purchased at the public sale of personal property. There is no dispute about the facts. The table in question admittedly belonged to decedent. It was purchased by the widow and not paid for. This exception must therefore be sustained.

3. At the time of decedent's death, there was in the dwelling a refrigerator which was included in the inventory and appraised at $225. At the public sale of personal property the widow gave notice that she claimed the refrigerator as a gift from decedent and refused to give it up. In accordance with the position taken at the audit by counsel for the widow, the auditor directed the executor to institute an action of replevin in the common pleas court. In his exception, the executor takes the position that the orphans' court should charge the widow with the appraised price of the refrigerator as he had attempted to do in his account.

It was clearly error to direct an independent replevin action. As we pointed out in Heltzel's Estate, 52 D. & C. 337, the orphans' court has jurisdiction to determine ownership of personal property which was in decedent's possession at the time of his death. In the event of a substantial dispute, an issue must be submitted to the common pleas for jury trial, but the orphans' court

then makes disposition of the property on the basis of the verdict so found. In the present case there were two hearings before the auditor. Despite ample opportunity, the widow did not offer any testimony as to her ownership of the refrigerator. Her claim is based upon a mere assertion, unsupported by proof. Since no factual dispute has been presented, it is unnecessary to award an issue for trial: Balok Estate, 151 Pa. Superior Ct. 592, 595.

What is the presumption arising from the exact circumstances under consideration, namely, the presence of personal property in a dwelling owned by a husband and jointly occupied by himself and his wife? Our answer is that the ownership of such personal property is presumed to be in the husband. This conclusion is supported not only by a line of early decisions, but also by the recent case of Chadwick Estate, 154 Pa. Superior Ct. 157, wherein Judge Hirt states the general rule to be that where husband and wife live together in the same home, ownership of personal property in the possession of both is presumed to be in the husband. We are not unmindful of McCarter's Estate, 36 D. & C. 625, in which Judge Ladner ruled that personal property in the joint possession of a husband and wife living together is presumed to be owned by both as tenants by the entireties. Entirely aside from the presumption, the widow's assertion in our case that she acquired ownership by gift from her husband necessarily implies that the refrigerator originally belonged to the husband. The burden of proof would be upon the widow to show the alleged change in ownership.

Counsel for the widow argues that he did not anticipate that title to the refrigerator would be determined by the audit and requests that the record be sent back for the taking of further testimony. It is not stated who the proposed witnesses are, or what they would say. Certainly the widow herself could not testify. Under all of the circumstances, including our re-

luctance to countenance a complete change of legal theory at this stage of the proceeding, we have concluded not to grant the request. In a markedly similar situation, Judge Stearne, now Mr. Justice Stearne of the Supreme Court, refused a further hearing: Sim's Estate, 29 D. & C. 163. No attempt was made to show that the refrigerator was worth less than the appraised value. The exception must therefore be sustained.

4. Finally, exception is taken to the amount of the auditor's fee. By stipulation of all parties concerned, it has been agreed that this fee shall be reduced to $150. To such extent, the exception is therefore sustained.

### *Decree*

Now, July 23, 1948, in accordance with the foregoing opinion, the exceptions are sustained. Counsel for the executor is directed to submit a statement of distribution for the approval of the court.