## Carnegie Estate

*William F. Knox*, for petitioner.

*Thomas V. Douglass* and *Harvey F. Sloan*, for exceptants.

RYAN, J., December 27, 1950.—A trustee here petitions for authority to use the proceeds of a fire insurance policy in substantially rebuilding the destroyed premises. Affirmative recommendation is made in the report filed by the fiduciary ad litem appointed to represent minors and persons in posse. Citation was issued to all parties in interest. One of them, entitled contingently in remainder, filed answer (subsequently amended) resisting such application of the insurance proceeds and by trial stipulation was joined by two others similarly interested.

At the time of her death on January 16, 1916, Lucy C. Carnegie owned a tract of land consisting of approximately 16,500 acres and comprising the major portion of Cumberland Island in the State of Georgia. On the property stood a number of large residences and about 300 other buildings accessory thereto. The groupings appear to be such that each residence and its accessory buildings are indicated as a separate area. On January 7, 1949, one of the residences was completely destroyed by fire and the question here relates to the application of $48,000 received by the successor trustee as insurance proceeds in payment of the fire loss.

In her will, duly probated in the office of the Register of Wills in and for Allegheny County, testatrix devised the Cumberland Island property to her executors and trustees with direction ". . . to hold during the lives of my children (naming all) and the survivor of them, maintaining the same out of the general income of the trust estate hereinafter created, and permitting such of my children as desire to do so to occupy the same free of rent; the children so occupying said Island property shall pay all of the expenses of the households and stables, it being my intention that my said Executors, in their capacity as Trustees, shall, out of the income of that portion of my estate specifically described hereinafter, pay only the expenses of maintaining the said Island property and improvements thereon, with taxes and insurance . . ." By codicil one son was eliminated from all relation to the Cumberland Island property and substitutionary provision was made for him.

Marked characteristics of this trust are apparent upon examination of the testamentary language. The whole subject matter is realty and, under the words used, can never be anything else. The sole purpose is to permit free occupancy of the premises with preservation thereof for ultimate remaindermen and, on the face

of the testamentary language, can never be anything else. The trust is to continue for the period as limited irrespective of actual occupancy of the premises or intermittency thereof. The trustees are required to maintain the buildings and improvements whether or not occupied. Indeed, the will is silent as to nonoccupancy. A distinct feature of the trust is that it is not intended to be self-supporting. Funds for the required maintenance are provided out of rentals from the Carnegie Building, Pittsburgh, Pa., which real estate is to be held by the same trustees in trust, "to use so much of the yearly income as received as may be necessary" for the Cumberland Island expenses "as long as the trust to said Island property continues".

By specific mention of "insurance" it is plain that testatrix contemplated the possibility of loss by fire and the consequent receipt of insurance money by the trustees. Although the language contains no express disposition of such proceeds, certain implications are clear. Nothing suggests retention of insurance money for investment; by no word could any person claim income; and the result would be unlawful accumulations which intent is not here imputable to testatrix. The trustees would have no authority to use such income for maintenance of the Cumberland Island buildings and improvements in relief of the Carnegie Building trust. The latter is expressly so burdened under plain testamentary mandate. If a building should be partially damaged by fire, repair of the damage would be in order as a sensible (if not necessary) measure in general and, too, so that the building be available for occupancy and be preserved as intended and required. In the event all the buildings should be simultaneously destroyed by fire, restoration thereof would be the only way to effectuate the trust purpose. Like implication must follow upon destruction of a single residence.

In Catanach's Estate, 273 Pa. 368, 372-73, it is held that "So far as the trust interests were concerned, the orphans' court had jurisdiction to authorize the expenditure of a sufficient sum of money to restore the property for the purposes of the trust". There the court approved the use of insurance money to rebuild a barn and silo damaged or destroyed by fire. To the same general effect, trust principal may be applied to the improvement of real estate which has become dilapidated: Wright's Estate, 234 Pa. 580; Longbotham's Estate, 346 Pa. 94. True it is that in each of those cases the properties were related to the production of income while here no such purpose exists and the only business (if such it may be denominated) of this trust is to maintain the buildings and improvements for free occupancy and for preservation. The entire property constituting the principal of this trust is so devoted without regard to the extent of occupancy.

It is not controverted that "If trust property is destroyed by fire or other casualty, the proceeds of insurance thereon received by the trustee are principal" (A. L. I. Restatement of the Law of Trusts, §233-b). Thus fire insurance proceeds take the place of the damaged or destroyed property. Since the subject matter of this trust is land, the insurance money now on hand as principal necessarily partakes of such nature and must be deemed to be realty. Our conclusion is that the will does not permit application of the insurance proceeds on hand to any use whatsoever except restoration of the destroyed premises.

Various contentions of the parties require no adjudication here. Whether the trust disposition be desirable is not for us to say. We cannot make any changes therein. Interpretation of a testamentary writing can never assume the proportions of reformation "and the court may not properly insert into a will a substantive

disposition of property which the testator, whether by design or inadvertence, failed to make": Butler Estate, 364 Pa. 279, 282, quoting from Verner Estate, 358 Pa. 280, 285. Two of testatrix's children presently survive and it may be that these two cannot "occupy" all the residences. Nevertheless, so long as any of the children of testatrix are in life and do not waive or renounce the right of free occupancy, this trust must continue under the directions contained in the will.

Testatrix was survived by eight children, seven of whom were entitled to occupancy of the Cumberland Island property. It would appear that one or more of the children had built several of the residences and perhaps the buildings accessory thereto. Upon the death of a child her or his family continued the occupancy with the consent of, or at least without objection by, the other children. This was described as a recognized custom and upon it is based the argument that the trustees must accord grandchildren the right of free occupancy. On the other hand it is urged that only "children" are so entitled. Our decision has been reached without regard to this problem. However, it can be said that, although parties may be bound by their own interpretation of an agreement or by a custom established by and among themselves, no such principle should be permitted to reform a decedent's last will and testament or to create nonexistent interests thereunder.

The successor trustee testified as to the asserted advantage of erecting two small modern dwellings rather than a large old-fashioned mansion-type residence and gave his opinion that so to do would aid in division of the property upon termination of the trust on the death of the survivor of the seven named children. At that time the Cumberland Island property "shall be vested, but not before, absolutely in such persons and for such estates and proportions as would take the same under

the intestate laws of the State of Pennsylvania had I died intestate possessed thereof, and all my named children had survived me and died intestate, except that the husband of any of my said daughters shall be excluded" from any right of curtesy.

Testatrix named her five eldest children (except the one excluded from participation in Cumberland Island rights) as trustees of this trust and as trustees of the Carnegie Building trust. On January 17, 1947, Andrew Carnegie, 2nd, the last surviving trustee, resigned and Robert D. Ferguson, Esq., was appointed as successor trustee of the Cumberland Island trust and Peoples First National Bank and Trust Company was appointed trustee of the Carnegie Building trust. Prior thereto it seems that a family occupying a particular residence carried insurance thereon. Following his appointment Mr. Ferguson caused to be made an insurance survey of the property and took out policies of fire insurance in his own name as trustee covering the buildings but not the contents or furnishings thereof, which admittedly belong to a particular child or the family of a deceased child.

Beyond all doubt the Cumberland Island property is dedicated to the sole purpose of free occupancy and preservation under the will of testatrix. To such end "the buildings and improvements" are to be maintained out of funds provided by the Carnegie Building trust. No use of the proceeds of a fire insurance policy or policies is permissible for other than restoration of the premises so that they be available in accordance with the sole purposes of this trust. Nothing under the will or the law suffices to authorize diversion of insurance proceeds from such express trust purpose to what might be deemed a better income producing investment. On the face of testatrix's will the successor trustee may use the insurance proceeds on hand to restore the de-

stroyed premises and in that regard should exercise his discretion as to whether or not there be one mansion-type or two smaller and more modern residences. If the latter, his discretion is to be further exercised as to a real location so as to aid in equitable division of the property upon termination of the trust.