## Freeman Estate

*William B. Butz* and *George H. Sacks*, for accountants.

*Kenneth H. Koch* and *Robert E. Haas*, for Walter M. Freeman, administrator.

*Edwin K. Kline*, for objector.

GEARHART, P. J., May 13, 1954.—Decedent, Preston A. Freeman, died testate on May 23, 1943. In his will he made several specific bequests to his four children and then provided: "The Real Estate and Jewelry Stock & Fixtures to be equally devided share & share alike".

Letters of administration c. t. a. were issued to Blanche M. Siegfried and Walter M. Freeman. The personalty was administered and accounted for in the first account of the administrators. The accountants also accounted for income from realty to June 21, 1945. The personal property was appraised at $47,106.96, and that was disposed of in an adjudication dated April 18, 1946. Also included in decedent's estate at the time of his death was real estate appraised at $86,-170.00. Of this amount $80,000 represented premises

no. 911 Hamilton Street and 910-912 Court Street, Allentown, Pa.

The account before us deals with the proceeds of the Hamilton-Court Street property, sold at public sale on May 14, 1953, for $132,000. The account also includes income derived from the realty from June 1, 1945, to July 15, 1953.

The settlement of this estate involves a long history of bickering and dispute amongst the four children, to wit: Dr. Benton C. Freeman, Walter M. Freeman, Blanche M. Siegfried, and Alma F. Schlosser. Objections were filed by Alma F. Schlosser to the partial account in 1945. After considerable litigation, argument and conferences, the questions raised were settled. At that time no disposition was made of premises 911 Hamilton Street and 910-912 Court Street, a valuable property located in the heart of the business section of Allentown. The first floor is occupied by the P. A. Freeman, Inc., jewelry store. Blanche M. Siegfried, an heir and accountant, owns a substantial interest in this business. The second floor is leased by Dr. Benton C. Freeman, and the Court Street premises are leased to other parties. From the standpoint of Alma F. Schlosser, this leasing of the property by two of the heirs, has to a large extent created the present dispute.

Alma F. Schlosser filed 10 objections to the account. To summarize, the objections relate to the fees of counsel for the accountants, to the commissions claimed by the accountants, and to the income account of the accountants. Further, the objector claims that the rentals paid by P. A. Freeman, Inc., and by Dr. Benton C. Freeman were grossly below their market rental value. Objector urges that the accountants should receive no commission out of income because of their failure to promptly liquidate the real estate and because of the improper manner in which the real estate was operated. The objector requests that the account-

ants be surcharged with the difference between the reasonable rental value of the premises, beginning June 1, 1945 and ending July 15, 1953, and the amount collected as set forth in the account.

In order to properly dispose of the objections, a recital of some pertinent evidence is in order. After years of contention amongst the heirs, the matter of the disposal of the real estate came to a head. Thus, on January 29, 1953, Walter H. Freeman, one of the accountants, presented his petition to this court requesting a citation for an inquest in partition of premises 911 Hamilton Street, Allentown, Pa., and a citation was duly issued, returnable to February 13, 1953. On February 13th an answer was filed on behalf of Blanche M. Siegfried, one of the administrators c. t. a. of the estate, wherein it was asserted that a partition proceedings could not be maintained because by the terms of testator's will, an equitable conversion had resulted and therefore it was the duty of the administrators c. t. a. to effect the sale of the premises.

The matter was set down for hearing and argument, and on February 26, 1953, there appeared in court Messrs. Haas and Koch, representing Walter M. Freeman, petitioner in partition; George H. Sacks, representing Blanche M. Siegfried; Edwin K. Kline, Jr., representing Alma F. Schlosser; Harold A. Butz, representing Dr. Benton C. Freeman. On February 26, 1953, the objector then entered the picture and presented her petition to the court, wherein she prayed for a citation against the administrators to show cause why premises 911 Hamilton Street should not be sold and why the administrators should not account for income from the real estate from June 1, 1945 to date. At this juncture the court recognized the anomalous situation, i.e., of one administrator starting partition proceedings, the ultimate purpose being, of course, to procure the distributive shares of petitioner and the

other heirs, and the other administrator, Blanche M. Siegfried, denying that partition was the proper proceeding, but alleging on the other hand that the will worked an equitable conversion. If this latter contention were correct, then naturally the premises should be sold by the administrators c. t. a.

At this point, Mr. Kline, representing Alma F. Schlosser, presented his petition to the court as aforesaid. Therefore, three of the four heirs, based on their petitions and answers, sought the sale of the property in one fashion or another. The court thereupon asked Harold A. Butz, representing Dr. Benton C. Freeman, whether he had any objection to the sale. Mr. Butz replied that he had not. The court then indicated to all the parties that after the lapse of 10 years the complainants, Walter M. Freeman and Alma F. Schlosser, were entitled to their distributive shares and that a sale should take place. To this proposition all parties agreed, whereupon the court dismissed the petition of Alma F. Schlosser seeking a citation for an accounting, etc. After consultation with all counsel, the court dismissed the citation to award an inquest. Then, upon motion of counsel representing all parties in interest, the court entered an order directing the administrators c. t. a. to sell premises 911 Hamilton Street, Allentown, Pa., on or before Friday, May 29, 1953, and to make return to the court for confirmation on Wednesday, June 10, 1953. In the same order authority was granted to the administrators c. t. a., viz., Blanche M. Siegfried and Walter M. Freeman, to bid at the sale, announcement to be made at the sale that authority to bid had been granted by the court. It was further incorporated in the order, by agreement of all parties, that the administrators should account for rents received from June 1, 1945, up until the time of the sale. The court was aware of the hostility existing amongst the four legatees and of the fact that the

parties themselves seriously disagreed as to the value of the Hamilton Street property. In order to forestall any question as to the adequacy of the price to be obtained at the prospective sale, the court suggested that an independent appraisement be made by appraisers appointed by the court. Counsel agreed, whereupon the court appointed two members of the bar whose qualifications as to knowledge of Hamilton Street real estate values are well known, and in whose integrity and judgment the court has the fullest confidence. The appraisers valued the property at $123,000. The property was sold at public sale on May 14, 1953, to Blanche M. Siegfried for $132,000. The sale was duly confirmed and the administrators are now accounting for the proceeds.

The first objection deals with the fees claimed by Robert E. Haas, Esq., in the amount of $2,500; by George Sacks, Esq., in the amount of $2,500, and by William B. Butz, Esq., who prepared and certified the account, and who was paid a fee of $1,000. Mr. Butz had also received a substantial fee at the first accounting.

The objection with respect to the payment of $1,000 to Mr. Butz was withdrawn. Mr. Butz stated on the record that the charge was made for services rendered his client, Blanche M. Siegfried, from 1945 to the date of the audit. The consideration of the objection is then to the fees of Mr. Sacks and Mr. Haas.

The law with respect to the allowance of counsel fees in settling estates has been stated by the Supreme Court in a host of cases. In determining what is a reasonable fee, many factors must be taken into consideration, such as the amount and character of the services rendered, the extent of the work and the time involved, the novelty and difficulty of the questions presented, the character and importance of the litigation, the responsibility assumed by counsel, the value

of the property affected, the professional skill and experience called for, the standing of the attorney in·his profession, the ability of the client to pay, the benefit derived from the services and the advantage accruing to the estate: Huffman Estate (No. 3), 349 Pa. 59, 64; Davidson's Estate, 300 Pa. 26; Crawford's Estate, 307 Pa. 102.

Messrs. Haas, Koch, Sacks and Butz have testified to the services they rendered the accountants. The fees relate chiefly to the services rendered in the sale of the property. Thus, Messrs. Haas and Koch, who are associated in the practice of the law, were engaged by Walter M. Freeman in the autumn of 1952 to bring about the settlement of the estate. Mr. Haas testified that he prepared the petition for citation in partition and then twice appeared in court in February of 1953, to which we have hereinbefore adverted. Mr. Sacks appeared in court at the same time on behalf of Blanche M. Siegfried, resisting the partition proceedings. Mr. Haas in his own behalf testified that in addition to preparing the citation for partition and consulting with Walter M. Freeman, he was active in informing people that the premises were for sale, went over the conditions of the sale with Mr. Koch and Mr. Butz, attended the settlement, and in conjunction with the other counsel helped prepare the settlement sheet. He agreed that the only legal problem after the sale was the amount of commissions to be claimed by the accountants. He examined the account, but took no part in its preparation.

Mr. William Butz testified that the only legal problem that arose after the order of sale was the commissions to be charged by the administrators, and apparently he had no interest in the fee of $5,000, charged by Messrs. Haas, Koch and Sacks for their services to the estate. Mr. Butz was the attorney of record in the estate from its inception and it was· he who certified

to the account. Mr. Sacks was associated with him and was called into the matter to aid in resisting the partition proceedings and to assist in the sale of the real estate and the preparation of the account.

The court is not wholly unfamiliar with what took place in this estate, especially from January 1953 to the time of the sale. While the fixing of counsel fees is always a matter of delicacy and frequently of difficulty, it devolves upon us to fix it. The duty is not always a pleasant one: Robb Appeal, 41 Pa. 45; Good's Estate, 150 Pa. 307; Rambo's Estate, 327 Pa. 258, 261.

When the parties appeared in court in February of 1953, the court was strongly impressed with the fact that primarily Messrs. Haas and Koch were representing Walter M. Freeman's personal interests. And Mr. Sacks, in opposing the partition proceedings initiated by Walter M. Freeman, was primarily representing the personal interests of Blanche M. Siegfried, to whose benefit it was, as principal owner of the jewelry business, to maintain the status quo. And, of course, Mr. Kline was representing the personal interests of Alma F. Schlosser, and Harold A. Butz was representing Dr. Benton C. Freeman. In short, each counsel was representing the personal interests of his client rather than the interests of the estate.

Therefore, we rule that any charge for services rendered prior to February 26th of 1953 by Messrs. Haas and Koch for Walter M. Freeman, should be borne by Walter M. Freeman personally. Likewise, any charge by Messrs. William Butz and Sacks for services rendered in opposing the partition proceedings should be borne by Blanche M. Siegfried personally.

In so finding we have taken into consideration the fact that Mr. Butz has been paid $1,000 for the services he rendered from 1945 to the accounting period, and further, that Mr. Sacks was an associate of Mr. Butz in the latter part of the administration of this

estate. The fee which we shall hereinafter allow will be for services rendered subsequent to February 26, 1953, for conducting the sale, preparation of the account, etc.

The question then arises as to what is a reasonable fee for the services rendered by counsel to their respective administrators in connection with the sale of the property and the subsequent filing of the account. Giving consideration to the testimony submitted by counsel with respect to the services rendered and to the applicable principles of law concerning counsel fees, as well as the surrounding circumstances, viz., the diverse and antagonistic interests not only between the administrators themselves but the heirs as a group, we are of the opinion that a fair and reasonable fee for Messrs. Haas and Koch should be $1,500, and for Messrs. Sacks and William Butz $1,500, or a total of $3,000. In sustaining the objection and reducing the fees charged in the account, we do not in any wise minimize the services rendered by counsel to their respective clients.

Mr. Haas testified that when his client engaged him, he told the client in substance that he expected his full coöperation and that he, Haas, meant business and would see that the settlement of the estate was brought to a conclusion. And accordingly, with characteristic energy, Mr. Haas proceeded to do just that and brought the matter before the court, as already indicated. It should be stated that Mr. Kline, in behalf of the objector, was equally strenuous in urging the sale of the property.

On the other hand, Mr. William Butz related the difficulty he had with his clients and the many interviews with the parties in interest. We believe, however, that the services were rendered principally in behalf of Blanche Siegfried, and for such individual services she should be responsible, not the estate.

Accordingly, objection no. 1 is sustained to the extent as hereinbefore stated.

Objections nos. 2, 3 and 9 may be considered together. They relate to commissions claimed by the accountants. The objector first of all claims that the accountants are not entitled to any commissions because they have not faithfully executed the trust, and secondly, if entitled to any commissions, the commissions claimed are excessive.

The objector would deny the accountant Blanche Siegfried's commission for the reason that she was the purchaser at the sale. The administrators, in the order of the court directing the sale, were authorized to bid at the sale. An announcement to this effect was made at the sale. However, the objector complains that Daniel McCarthy, a lawyer not of record, did the bidding for Mrs. Siegfried. It is contended that by having Mr. McCarthy do the bidding instead of Mr. Butz or Mr. Sacks that Mrs. Siegfried has indirectly violated the court's order giving the administrators the right to bid. No cases ruling on the exact question have been cited to the court, and we have found none.

In examining the facts realistically, we cannot find that the sale was to the disadvantage of the estate; this for the reason that the bidding was competitive and that the final bid was $9,000 more than the appraisement of the court appraisers. It is not contended by the objector that more could have been obtained for the premises if Mrs. Siegfried or Mr. Butz had done the bidding. In Catanach's Estate, 273 Pa. 368, 374, it was held that the fiduciaries, having obtained leave to become purchasers, were entitled to their commissions. Without approving the procedure, under the present circumstances we see no reason to deny the accountant her commission.

The accountants have charged five percent commission on income received from real estate. The objector

argues that the real estate was not exposed to sale for 10 years, and when finally sold it was done so because of the institution of partition proceedings by one of the heirs who is a coadministrator, and by reason of her petition seeking a rule to show cause why a sale should not be made. The objector points to the fact that the two administrators as between themselves could not agree to sell the property and that the reason they could not agree to sell was because Mrs. Siegfried, as a substantial owner of the jewelry business, did not want it sold. The objector maintains that this was the real reason for delaying the sale of the property until 1953.

The general rule requires the executor or administrator to convert the assets and make distribution within a reasonable time. Thus, the Fiduciaries Act of June 7, 1917, P. L. 447, sec. 49 (a), provides that no executor or administrator shall be compelled to make distribution until six months after the granting of the letters: Minichello Estate, 368 Pa. 639, 644. And because of delay in filing accounts, fiduciaries have been charged with interest upon the distributive shares: Bear's Estate, 9 Pa. Superior Court 492; Forry's Estate, 246 Pa. 448; Curran's Estate, 18 D. & C. 103.

The objector would be in a very strong position to sustain her contention except for the fact that in an equity proceeding in the Court of Common Pleas of Lehigh County to September term, 1946, no. 5, she herself apparently assented to the withholding of the sale of the property. It appears from the record that an amicable decree was entered by the court. The objector was represented at that time by Daniel M. Garrahan. While the suit primarily concerned the management of the corporation known as P. A. Freeman, Inc., the question concerning the property at 911 Hamilton Street, Allentown, Pa., was evidently considered and entered into the final settlement of the

equity suit. Thus, the common pleas court on November 10, 1947, entered the following order:

"It is hereby ordered and declared that Alma F. Schlosser, plaintiff, shall convey 125 shares of P. A. Freeman, Inc., stock for the sum of $17,000, for which payment shall be made within 30 days of the date hereof, and that the property at 911 Hamilton Street, Allentown, Pa., shall retain its present status for a period of three years, dating from the rate hereof, without the plaintiff selling the same or bringing any action for partition . . . ".

It would appear that the delay in selling the property was acquiesced in by the present objector, if indeed she did not actually agree to it. Accordingly, we find that the accountants should not be deprived of commissions charged for rents collected.

We next take up the question of the three percent charged on the $132,000, the price for which the property was sold. Commissions are given as compensation for labor and responsibility assumed: McCauseland Appeal, 38 Pa. 466, 470; Fiscus' Estate, 13 Pa. Superior Court 615, 620; Williamson Estate, 368 Pa. 343, 348, 349; McCaskey's Estate, 307 Pa. 172. And whether the compensation of the fiduciary is arrived at by the way of percentage, ". . . true test is always what the services were actually worth . . .": Williamson Estate, supra, 349.

It is also well settled that commissions are allowed on the appraised value of the corpus at the time it reaches the hands of the administrator or executor. ". . . Subsequent accretions should not increase the allowance of compensation, nor losses reduce it, unless exceptional circumstances in fairness require that this be done": Gardner's Estate, 323 Pa. 229, 239; Miller's Estate, 132 Pa. Superior Ct. 437; Smith's Estate, 35 D. & C. 383, 385; Reynolds' Estate, 60 D. & C. 90.

In the instant case there are no exceptional circumstances which take this case out of the ordinary rule. The enhancement in the value of the property from 1943, the date of the death of decedent, to the time of the sale, was due largely to changed economic conditions.

Accordingly, objection no. 2 is sustained, and instead of allowing the accountants commission at the rate of three percent on $132,000, they will be allowed a commission of three percent on $80,000. The accountants will be surcharged with this difference, or an amount of $1,560.

Objections nos. 3 and 9 are dismissed.

Objections nos. 4, 5, 6, 7, 8 and 10 may be considered together. They relate to the question of whether the accountants should be surcharged with a reasonable rent for the real estate. We have heretofore touched on this question. The objector complains that the administrators did not secure an adequate rental for the Hamilton Street premises, and so far as Blanche M. Siegfried is concerned, the objector specifically complains that she was managing the real estate in her own interests. The objector points to the fact that Dr. Benton C. Freeman, another heir, occupied the second floor of the premises and that he, too, paid an inadequate rent.

All of these objections might have weight and merit if it were not for the act of the objector herself. Thus, as hereinbefore pointed out, the question of the management of the real estate was brought up in the equity proceedings and incorporated in the order of November 10, 1947. The objector apparently agreed with the other heirs that the Hamilton Street property "shall retain its present status for a period of three years". When this order was entered, the objector was in court with her counsel, and her actions for three years there-

after indicated that she acquiesced in the matter. If objector's understanding of the court order was otherwise than what the order seems to express, it was incumbent upon her or her lawyer to speak up in court, or at least to take some proceeding to make known her position. Hunter, in Pennsylvania Orphans' Court Commonplace Book, vol. II, page 1162, states the principle thus: "Where a party was in court or represented by counsel, any laches or negligence on his part destroys the title to relief": Michener's Estate, 225 Pa. 66; Milliken's Appeal, 227 Pa. 502, and other cases.

Objector made no effort to have the rents increased, nor did she take any affirmative action until June 8, 1951, when she consulted Mr. Koch. From the testimony it appears that Mr. Koch then conferred with the administrators and as a result, the rent for the first floor premises was increased from $330 per month to $550 per month, and Dr. Benton C. Freeman's rent was increased from $100 per month to $150 per month. Dr. Benton C. Freeman, in addition to paying rent, made improvements to the property in the sum of $3,600, and Blanche M. Siegfried made extensive improvements to the first floor at the jewelry company's own expense.

That the objector did not want the premises sold at that time appears from her own testimony when, in response to a question concerning the meeting with attorney Koch in July 1951, she stated: "He [Koch] did want to partition the building for sale, and I said no".

In addition, the objector, following these negotiations, received statements, quarterly, for the years of 1950, 1951 and 1952, and she made no objection to the same. It should be noted that Mr. Koch communicated the result of his negotiations with the administrators to the objector and she expressed her satisfaction.

What objector now desires is to set aside the agreement reached in the equity proceeding in November

1947, and to set aside the agreement which her then lawyer, Mr. Koch, made in 1951 with the administrators with respect to the rents and which, under the testimony, she approved. Clearly, from her own testimony, she did not desire the premises sold in 1951.

Finally, it may be pointed out that while the income from the real estate seems comparatively low, the delay in selling the premises until 1953, whether by agreement of the parties themselves or otherwise, has proved advantageous to the four heirs. Thus, there is a capital gain of $52,000 from the date of the death of the decedent.

Accordingly, objections nos. 4, 5, 6, 7, 8 and 10 are dismissed.

Now, May 13, 1954, the account is confirmed subject to what we have stated in the body of this adjudication. The accountants will make distribution of the balance in hand as follows:

| | |
|---|---|
| Balance in hand | $85,817.79 |
| Plus $1,000 (To be deducted from credit of July 10, 1953, "To Robert E. Haas, Counsel Fee") | 1,000.00 |
| Plus $1,000 (To be deducted from credit of July 10, 1953, "To George H. Sacks, Counsel Fee") | 1,000.00 |
| Plus $780 (To be deducted from credit of July 10, 1953, "To Walter M. Freeman, one-half of Administrator's Commission") | 780.00 |
| Plus $780 (To be deducted from credit of July 10, 1953, "To Blanche M. Siegfried, one-half Administrator's Commission") | 780.00 |
| Total Balance for Distribution | $89,377.79 |

*To:*

| | |
|---|---|
| Walter M. Freeman, Distributive Share | $22,344.44 |
| Benton C. Freeman, Distributive Share | 22,344.45 |
| Blanche H. Siegfried, Distributive Share | 22,344.45 |
| Alma F. Schlosser, Distributive Share | 22,344.45 |
| Total Distribution | $89,377.79 |

This decree will become final unless exceptions are filed within 10 days herefrom.